

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00132-CR

WESLEY DALE MASON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 259th District Court
Jones County, Texas
Trial Court No. 011574, Brooks H. Hagler Presiding

January 9, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Wesley Dale Mason, appeals his conviction for murder. Through a single issue, he contends the trial court erred by admitting evidence of his methamphetamine use the day before the murder. We affirm.[1]

---

[1] Because this appeal was transferred from the Eleventh Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

*Background*

At trial, witnesses testified that, on March 4, 2017, they observed a man standing in front of a blue Dodge pickup and firing a shotgun thrice at another individual. The latter was then seen falling or jumping into a bar ditch. The victim called his wife and told her that "Bandido Booom just shot me in the chest," and to come quickly. Upon arrival, the victim's wife unsuccessfully attempted to assist him, and the victim was pronounced dead at the hospital. The shooter (i.e., appellant) was a member of the Bandidos motorcycle club, while the victim was a member of a motorcycle club known as "Kinfolk."

Appellant drove from the scene in the blue Dodge pickup. It was found a short distance away on the roadside, inoperative, and without occupants. However, a shotgun lay on its front seat. In learning that a Bandido member and the group's "clubhouse" was within a short distance from the crime scene, officers went to that location. They encountered appellant with a minor wound on his foot.

While awaiting transport to the hospital, appellant stated to the officers: "Don't tell me he's dead." At the medical facility, he underwent treatment. It included the garnering of background information explaining the reason for his seeking treatment and a blood draw. A toxicology report of the draw revealed the presence of methamphetamine in appellant's blood while the medical records contained his statement that he had ingested the substance a day earlier.

The aforementioned medical records were admitted into evidence, at trial. Counsel for appellant had objected to their admission on Rule 403 and 404(b) grounds,

2

as well as hearsay.[2]  The trial court overruled the objection.  The witness through whom the records were offered said nothing of the drug in front of the jury.

Methamphetamine was mentioned, though, during the State's examination of the investigating official who interviewed appellant.  The Ranger was asked if during the interview appellant "appeared to be somewhat in a lethargic mood."  His answer was "correct."  Several other questions relating to methamphetamine use were asked of the witness.  Little else was said of the drug thereafter.

*Sole Issue – Admission of Methamphetamine Use*

Appellant contends that "[t]he trial court erred in admitting evidence of methamphetamine use by [him] the day before the incident."  Assuming *arguendo* that admitting the evidence was error, we find the decision harmless.

When the error is nonconstitutional, the improper admission of evidence is harmful when it affects appellant's substantial rights. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).  It fails to do so where it did not influence the jury or had but a slight effect upon its deliberations.  *Id.*  And, in making that determination, we examine the entire trial record and calculate, as best as possible, the probable impact of the error.  *Id.*  This includes the testimony, physical evidence, jury instructions, both the State's and defendant's theories, closing arguments, and voir dire, if applicable.  *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014).  Factors to consider include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be

---

[2] Texas Rule of Evidence 403 states that although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.  Rule 404(b) states that: "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  TEX. R. EVID 404(b).

considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether overwhelming evidence of guilt was present. *Id.*

Here, the guilt/innocence phase of the trial lasted approximately four days, and the State called eighteen witnesses. The witness through which the medical records and toxicology report were admitted was the eleventh witness to testify. In relationship to the entire trial, the time spent on admitting those records was nominal. The witnesses who preceded and included witnesses who saw the shooting, a Texas Ranger who investigated it, the medical examiner who conducted the autopsy on the victim, and another Ranger who reconstructed the events for the jury, among others. Their testimony was rather detailed and graphic. Through it, the jurors heard about numerous topics other than appellant's toxicology level or use of methamphetamine. Those topics included the shooting, motorcycle clubs, the involvement of both appellant and the victim in them, how the victim was shot, where he was shot, and reference to appellant lying in wait for the victim. This scenario leads us to conclude that little time was expended on the topic of the methamphetamine usage, which topic was submersed within other more informative and attention-grabbing evidence.

Also of note is the lack of attention the State afforded the evidence in question during its closing argument. Little was said of it.

Furthermore, the evidence of appellant's guilt was substantial. He argued that he acted in self-defense. Yet, the evidence of his guilt also included his own statement to an investigating official about the shooting being "purely personal" because the victim had allegedly been "messing" with appellant's girlfriend or fiancée.

4

Given the circumstances of record, we cannot say that appellant's substantial rights were affected by the admission of the medical records and toxicology report. So, even if the trial court erred in ruling as it did, the error was harmless.

Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice


Do not publish.